**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **CHRISTI HILLEBRANDT** | : | **CIVIL ACTION NO. 2:16-cv-0844** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **UNUM LIFE INSURANCE CO.** | | |
| **OF AMERICA** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court are memoranda filed by plaintiff Christi Hillebrandt and defendant Unum Life Insurance Company of America ("Unum") relating to the plaintiff's petition for review of Unum's decision to deny accidental death benefits for the death of her husband, Charles Hillebrandt ("decedent"). Both parties now seek judgment as a matter of law, following remand of the case to the plan administrator for consideration of additional evidence. *See* docs. 16, 19. Because the challenged decision arises from a life insurance policy that the decedent obtained from his employer, the court's review is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

The matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this court. For the reasons provided below, Unum is entitled to judgment as a matter of law in this matter. Accordingly, **IT IS RECOMMENDED** that plaintiff's claims be **DENIED** and **DISMISSED WITH PREJUDICE**.

-1-

# I.
## BACKGROUND

This action arises from Unum's denial of accidental death benefits for the decedent's death on May 6, 2015.[1] The decedent had basic and supplemental life insurance coverage through group plans covered by ERISA and issued to his employer. *See* doc. 10, atts. 2 & 4 (basic and supplemental policies). Both policies provide for payment of additional benefits for losses caused by accidental bodily injury, but state that losses "caused by, contributed by, or resulting from . . . disease of the body" are excluded from coverage. *See* doc. 10, att. 2, pp. 34–40; doc. 10, att. 4, pp. 46–52. Unum has discretionary authority, as delegated by the plan administrator, to make benefit determinations and interpret plan provisions. Doc. 10, att. 2, p. 54; doc. 10, att. 4, p. 67. Additionally, under both plans the insured or his representative is required to show that a covered loss occurred. *See* doc. 10, att. 2, p. 15; doc. 10, att. 4, p. 16.

### A. *Original Claim Review*

The decedent, a 58-year-old man, was scuba diving in Cozumel on May 3, 2015, when he surfaced due to difficulty breathing. Doc. 10, att. 1, p. 38. He passed into a coma and was airlifted to a hospital in Houston, Texas, where he died on May 6, 2015. *Id.*

The incident report from the diving guide, which was translated from Spanish, described how the decedent began having complications within the first three minutes of diving, while the group was at a depth of up to 35 feet. *Id.* at 418. The diving guide helped him come up to the surface. *Id.* The decedent then told the guide that he was having trouble breathing and the guide noticed that he had a cyanotic appearance. *Id.* He returned to the boat with the decedent and gave him oxygen, but the decedent suffered what the guide described as a heart attack shortly thereafter.

---

[1] The plaintiff is the widow of the decedent and the designated primary beneficiary under both of his life insurance policies. Doc. 10, att. 1, p. 31; doc. 10, att. 3, p. 30.

*Id.* The guide provided CPR for 25 to 30 minutes, until they reached the shore and the decedent was moved to an ambulance. *Id.*

The emergency medical report from the Cozumel International Clinic stated that the decedent presented with problems breathing while scuba diving. *Id.* at 390. It recorded that, after ascent, the decedent's shortness of breath increased and led to cyanosis, apnea, and loss of consciousness. *Id.* Upon arrival at the clinic the decedent was cyanotic and comatose, with no palpable pulse. *Id.* He was resuscitated but remained in a coma. *Id.* A lung ultrasound showed "pattern B (focal alveolar interstitial syndrome) in both pulmonary bases" while an echocardiogram showed no abnormalities. *Id.* The decedent was diagnosed with "Overall neurological dysfunction Post prolonged CPR, Compensatory Respiratory Acidosis, Asthma, Hypertension, Overweight, Mild hyperkalemia." *Id.*

Following the decedent's death in Houston, an autopsy was performed at the Harris County Institute of Forensic Sciences. *See id.* at 36–42. The autopsy report noted that the decedent had a history of hypertension, dyslipidemia, and asthma, and that the body showed signs of "[h]ypertensive and atherosclerotic cardiovascular disease." *Id.* at 38, 42. Microscopic examination of the lungs showed "[f]ocal dilated airways with alveolar septal rupture." *Id.* at 43. The autopsy report concluded by noting that the death may have resulted from a cardiac event due to underlying cardiovascular disease, but that "the scuba diving equipment must be examined and tested in deaths that occur in this setting." *Id.* at 42. Because the equipment was unavailable for testing, the cause and manner of death were reported and undetermined. *Id.* at 37, 42.

The plaintiff submitted claims to Unum for basic and supplemental life benefits and basic and supplemental accidental death benefits. *Id.* at 34–35. She attached the decedent's medical records and the autopsy report. *Id.* She also provided an account of the decedent's death, stating

that it was "[her] belief and the consensus of [her] friends that there was an equipment failure, either mold in a line or some other defect that was the source of the resulting death." *Id.*

Unum submitted the claim and autopsy report for internal review by a consulting physician. *See id.* at 358–59. Dr. Barbara Golder, a pathologist, completed the review on September 23, 2015. *Id.* at 359. She observed that the autopsy showed "no evidence of trauma apart [from] that incurred by resuscitation" and that the scuba gear was not available for testing. *Id.* She stated that neither cardiac disease nor equipment failure could be ruled out on the information provided, and so she could not determine the cause of death "to a reasonable degree of medical certainty." *Id.* Unum then sent a letter to the plaintiff, approving her claims for basic and supplemental life benefits and advising that it was awaiting accident reports from Mexico before decided her claims for accidental death benefits. *Id.* at 369–71.

A couple of months later, Unum received the records from Mexico described above.[2] *Id.* at 389–90, 399–402, 418. Dr. Golder reviewed both reports and stated that there was insufficient information to reach a conclusion on the cause and manner of death. *Id.* at 435–37. Accordingly, Unum denied the plaintiff's claims for accidental death benefits and informed her of her right to appeal. *Id.* at 502–05. The plaintiff responded that she was appealing and understood that an independent review of the file would be made as a result. *Id.* at 522. She asked the reviewer to "consider the chain reaction theory of recovery for such incidents as there is no question that Charlie did not die of natural causes." *Id.* On February 15, 2016, Unum informed the plaintiff that the individual review had concluded and that it was upholding the original denial of benefits. *Id.* at 533–36.

---

[2] It does not appear that the equipment was ever found and tested, and neither party pursues that theory of the decedent's cause of death in the instant litigation.

On May 5, 2016, the plaintiff filed suit against Unum in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana. Doc. 1, att. 1, pp. 4–8. Unum removed the matter to this court, invoking federal question jurisdiction under ERISA. Doc. 1. The plaintiff presented additional materials (namely, an expert report from forensic pathologist Dr. James Caruso and excerpts from medical treatises), in support of her new theory that the decedent's death was caused by a pulmonary air embolism. *See* doc. 11, att. 1. She moved for judgment as a matter of law or, alternatively, remand to the plan administrator for consideration of additional materials. Doc. 11; doc. 11, att. 1. The court agreed that the new material should be considered and remanded the case to the plan administrator on March 15, 2018. Docs. 16, 19.

### B.  *Second Claim Review*

#### 1.  *New evidence considered*

On remand Unum considered the Caruso report along with a report prepared by its own expert, Dr. Craig Nelson. *See* doc. 34, pp. 14–15. Both Caruso and Nelson are board-certified forensic pathologists with specialized training in diving medicine. Doc. 11, att. 1, p. 9; doc. 30, att. 2, pp. 170–77. Dr. Caruso stated that he believed that the decedent had died from complications of an air embolism sustained while scuba diving. Doc. 11, att. 1, p. 9. He noted that "[d]eath due to a primary respiratory problem does not typically present with the dramatic collapse of the individual," and ruled out a fatal primary cardiac event based on the echogram performed in Mexico. *Id.* He further stated:

> The standard dictum in diving medicine is that a loss of consciousness within ten minutes after surfacing from a compressed gas dive is an air embolism until proven otherwise. . . . This was not a difficult diagnosis to make in this case and should have been the initial diagnosis for the decedent during the initial treatment administered in Mexico.

*Id.* He also noted that the diving equipment may or may not show evidence of malfunction, and that in his experience "improperly functioning equipment rarely plays a significant role in a standard open-water diving related death." *Id.*

Dr. Nelson completed his report on May 15, 2018. *See* doc. 30, att. 2, pp. 179–81. In addition to the reports described above, he reviewed records from the decedent's primary care physician. *Id.* at 179. He observed that the decedent was being treated for hypertension, hyperlipidemia, and asthma, among other conditions. *Id.* He also noted that the asthma was diagnosed in adulthood, with attacks averaging "once every few months" and was treated with maintenance and rescue inhalers. *Id.* Finally, he recorded that the decedent had been advised at his last physical (December 2014) to avoid heavy exertion and limit cold air exposure. *Id.*

Dr. Nelson opined that there were several potential medical and non-medical explanations for the "initial event" that caused the decedent to surface. *Id.* at 180. "Whatever the trigger," he continued, it was "possible that the initial event then initiated an ascent that led to the air embolism." *Id.* He also observed, however, that the decedent was able to speak upon his ascent, and that the diving guide did not note an out-of-control or rapid ascent or any breath-holding by the decedent. *Id.* at 181. He asserted that "none of these [factors] suggest[s] the setting that would cause air embolism." *Id.* Finally, he stated that the alveolar septal rupture found on autopsy could have resulted from resuscitation or mechanical ventilation. *Id.*

Dr. Nelson noted that the decedent's respiratory distress on surfacing could have been caused by asthma, immersion pulmonary edema (which could be worsened by heart disease or asthma), air embolism, or a combination thereof. *Id.* After reviewing the risk factors associated with the decedent's medical history, he determined that "[t]he initiating event in this case, and

therefore the final cause of death, cannot be determined with certainty."[3] *Id.* at 180–81. Accordingly, he stated, "the role of natural disease cannot be excluded as a cause or contributing factor in this death." *Id.* at 181.

### 2. Decision

On May 24, 2018, Unum sent a letter to plaintiff's counsel describing its second review and decision to uphold the previous denial of accidental death benefits. *Id.* at 208–15. It noted that the Caruso report had not considered the effects of the decedent's history of asthma and cardiac problems and reiterated many of Nelson's findings. *Id.* at 210–13. It then concluded:

> [I]t has not been established, as required by the policy, that Mr. Hillebrandt's death was an accidental bodily injury resulting from accident and independently of all other cause. While the cause and manner of Mr. Hillebrandt's death remains undetermined, there is evidence that his medical conditions could have reasonably contributed to or been the cause of his death.

*Id.* at 214.

The plaintiff answered with a letter from counsel, to "respond to Unum's [decision] and explore whether Unum is interested in conducting settlement discussions . . . before the matter is returned to [court] for further litigation." *Id.* at 228–29. Therein plaintiff stated that she did not dispute that the record prevented the parties from determining her husband's cause of death with "absolute certainty." *Id.* at 231. However, she maintained, the evidence showed "that an air embolism, whatever the originating event, was the proximate and substantial cause of Mr.

---

[3] Specifically, Nelson noted that asthma was commonly listed as a contraindication for scuba diving because of the disease's potential impact on breathing capacity and the fact that it causes constriction of small airways in the lungs, with the constriction potentially resulting in air trapping. Doc. 30, att. 2, pp. 180–81. "If air trapping occurs during ascent," he explained, "the expanding air has no escape, and a lung overexpansion injury, and therefore air embolism, may occur." *Id.* He further described increased risks from the decedent's other health conditions. *Id.*

Hillebrandt's death." *Id.* She also attached a rebuttal report from Dr. Caruso and argued extensively on case law and the points raised in Caruso's new report. *Id.* at 231–44.

In his rebuttal report Dr. Caruso maintained that he did consider the decedent's medical history as well as all relevant circumstances concerning the dive. *Id.* at 241. He disputed Dr. Nelson's interpretation of some of the evidence as pointing away from an embolism or indicative of other causes of death. *Id.* at 241–42. Finally, he admitted that heart disease or asthma might have initiated the crisis. *Id.* He maintained, however, that "it was most likely the air embolism from pulmonary expansion, an accidental event, which ultimately caused death." *Id.* Accordingly, he stated, for the purpose of vital statistics "the manner of death would still be classified as an accident as the air embolism due to pulmonary overexpansion injury was the most likely cause of death." *Id.* at 243.

Unum responded by letter dated August 17, 2018, and noted that Dr. Caruso's rebuttal report actually supported its determination that it could not be established that the death "was caused by an injury resulting from an accident and independently from all other causes." *Id.* at 248–49. Despite Dr. Caruso's contention that such a death would be considered an accident for the purposes of vital statistics, it asserted, it was bound by the terms of its policy which required that the death be independent of other, non-accidental causes. *Id.* at 248. It also stated that it would not address plaintiff's legal arguments, "as that discussion will no doubt be addressed by Unum's outside counsel . . . once the case is placed back on the court's docket." *Id.* at 248.

On October 2, 2018, the court lifted the stay in this matter on plaintiff's motion. Docs. 20, 22. After lodging the new record under the court's ERISA case order, the parties have filed memoranda in support of their respective requests for judgment on that record. Docs. 31, 34, 37. Accordingly, the matter is now ripe for review of Unum's decision on the second claim.

## II.
### LAW & APPLICATION

When a claim is governed by ERISA, the district court serves an appellate role to the appeal of the plan administrator's decision. *McCorkle v. Met. Life Ins. Co.*, 757 F.3d 452, 456 (5th Cir. 2014). Accordingly, the court's latitude "is very narrowly restricted" by ERISA regulations and case law. *Id.* Its review of factual issues is generally limited to the evidence before the plan administrator at the time he rendered his decision. *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999), *abrogated on other grounds by Met. Life Ins. Co. v. Glenn*, 128 S.Ct. 2343 (2008). Where, as here, the policies vest the plan administrator with discretionary authority to determine eligibility for benefits and interpret and enforce the provisions of the plan, the court's standard of review is for abuse of discretion. *White v. Life Ins. Co. of N. Am.*, 892 F.3d 762, 767 (5th Cir. 2018). This is the "functional equivalent of arbitrary and capricious review." *Conn. Gen. Life Ins. Co. v. Humble Surg. Hosp., LLC*, 878 F.3d 478, 483 (5th Cir. 2017) (internal quotations omitted). The plaintiff bears the burden of showing that an abuse of discretion was committed. *E.g.*, *Dowden v. Blue Cross & Blue Shield of Tex., Inc.*, 126 F.3d 641, 644 (5th Cir. 1997). A decision is an abuse of discretion if it was "made without a rational connection between the known facts and the decision." *Humble*, 878 F.3d at 483. The court's review "need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." *Vega*, 188 F.3d at 297.

In this matter, the parties agree that a non-accidental event relating to the decedent's pre-existing health conditions might have triggered his initial distress and his ascent, with an air embolism possibly resulting thereafter. Even if an unrelated condition was not the cause of his

ascent, the parties do not dispute that the occurrence of one was made more likely by his preexisting health conditions. The plaintiff maintains that such a loss would still be covered under the terms of the policy. She also asserts that Unum's construction of the evidence was unreasonable. Accordingly, the question is whether Unum abused its discretion in determining (1) that its policy barred coverage for losses where physical illness contributed to the accidental injury and (2) that substantial evidence showed that a physical illness caused or contributed to the death.

### A. Policy Interpretation

#### 1. Standard of review

Federal common law governs the interpretation of all ERISA-regulated plan provisions. *Provident Life & Accident Ins. Co. v. Sharpless*, 364 F.3d 634, 641 (5th Cir. 2004). In construing a plan provision, the court should "give the language . . . its ordinary and generally accepted meaning if such meaning exists." *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 331 (5th Cir. 2014). If the terms remain ambiguous after applying ordinary principles of contract interpretation, the court must "apply the rule of *contra proferentum* [*sic*] and construe the terms strictly in favor of the insured." *Id.*; *see also Ramirez v. United of Omaha Life Ins. Co.*, 872 F.3d 721, 727 (5th Cir. 2017) (noting that *contra proferentem* did not apply because the policy terms were unambiguous). Where, however, the plan grants the administrator authority to interpret plan terms, *contra proferentem* does not apply. *Smith v. Life Ins. Co. of N. Am.*, 459 Fed. App'x 480, 484 (5th Cir. 2012) (citing *High v. E-Systems Inc.*, 459 F.3d 573, 578–79 (5th Cir. 2006)). Instead, that discretion empowers the administrator to resolve ambiguities and the court is only entitled to determine whether the plan administrator's interpretation was reasonable.[4] *McCorkle v. Met. Life Ins. Co.*, 757 F.3d 452, 459 (5th Cir. 2014).

---

[4] As plaintiff notes, the Eastern District of Louisiana recently identified "an apparent conflict in the literature" on the issue of whether a plan administrator's discretion to interpret plan provisions trumped the applicability of *contra*

The Fifth Circuit generally applies a two-step inquiry when reviewing interpretations of policy language. It first determines whether the interpretation was legally correct and then, if it was not, whether it was an abuse of discretion. *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009). However, the court is not confined to this two-step test. Instead, it may skip the first step if it can more readily determine that the decision was not an abuse of discretion. *Conn. Gen. Life Ins. Co. v. Humble Surg. Hosp., LLC*, 878 F.3d 478, 483–84 (5th Cir. 2017) (citing *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 246 n. 2 (5th Cir. 2009)). In this matter, the latter question is more readily answered.

Under abuse of discretion review, the court should consider, among several other factors, whether the plan administrator was operating under a conflict of interest.[5] *Holland*, 576 F.3d at 247. Here Unum admits to a structural conflict of interest, because it is responsible for both determining eligibility and paying benefits. Doc. 34, p. 23. Where such a conflict exists, the court applies a "sliding scale standard" and accords the plan administrator's decision "less than full deference." *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007). This structural issue only "provides a minimal basis" for a potential conflict, however, and so the court reviews the decision "with only a modicum less deference than [it] otherwise would," unless the

---

*proferentem. McCusker v. Unum Life Ins. Co. of Am.*, 2018 WL 3844828, at *8 (E.D. La. Aug. 13, 2018). To this end, however, the Eastern District only pointed to cases where the Fifth Circuit had failed to mention the plan administrator's discretion, expressly noted that there was no specific grant of discretionary authority to the plan administrator, or ruled that *contra proferentem* did not apply in any case because the plan terms were unambiguous. *See Ramirez*, supra, 872 F.3d at 725, 727; *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997); *Todd. AIG Life Ins. Co.*, 47 F.3d 1448, 1451–52 (5th Cir. 1995). Accordingly, this court notes no conflict sufficient to overcome the clear pronouncements above.

[5] The court may also consider other factors, including the internal consistency of the plan, regulations formulated by the appropriate administrative agencies, and the factual background of the plan and any inferences of lack of good faith. *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637–38 (5th Cir. 1992). The parties present no evidence or argument on these factors, other than plaintiff's contention of procedural unfairness supra. Even though the court remanded this case after first review for consideration of additional evidence, we find no indication of bad faith in its handling of the claim. Accordingly, these factors do not impact the court's deference to the plan administrator.

plaintiff comes forward with evidence on the degree of the conflict and its impact on the administrator's decision. *Id.*

Circumstances suggesting a higher likelihood that the conflict of interest affected the decision include a history of biased claims administration and circumstances suggesting procedural unreasonableness. *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1027–28 (5th Cir. 2015). Here no evidence has been put forth on either circumstance, or anything other than the fact of Unum's admitted structural conflict. On the procedural unreasonableness factor, review of the record shows that Unum considered the Caruso report in full and further investigated the points raised, as plaintiff requested.[6] Accordingly, Unum is afforded only "a modicum less deference."

### 2. Application

Plaintiff maintains that the potential interference of an air embolism, "regardless of the triggering event," renders the cause of death accidental. Doc. 31, pp. 16–18. She relies on *Kellogg v. Metropolitan Life Insurance Co.*, 549 F.3d 818 (10th Cir. 2008). There the decedent was owed benefits if he had an "accidental injury that is the Direct and Sole Cause of a Covered Loss." 549 F.3d at 821. The policy excluded losses "caused or contributed to by . . . physical or mental illness." *Id.* After reviewing evidence that showed that the car accident was caused by the decedent's seizure, the Tenth Circuit reversed the plan administrator's interpretation of plan language and denial of benefits:

> While the seizure may have been the cause of the crash, it was not the cause of Brad Kellogg's death. The Plan does not contain an exclusion for losses due to **accidents** that were caused by physical illness, but rather excludes only **losses** caused by physical illness. Because there is no evidence that the seizure caused Brad Kellogg's death, MetLife's argument fails.

---

[6] The plaintiff argues procedural unreasonableness through comparison to *White v. Life Insurance Co. of North America* ("LINA"), 892 F.3d 762 (5th Cir. 2018), and *Schexnayder v. Hartford Life and Accident Insurance Co.*, 600 F.3d 465 (5th Cir. 2010). In both cases, however, the defendant completely ignored reports from experts who contradicted their bases for denial. These matters are inapposite to Unum's response to the Caruso report.

*Id.* at 832 (emphasis added).

Plaintiff also relies on other circuit court decisions overturning denials of accidental death benefits under similar plan language.[7] As Unum observes, however, *Kellogg* and many of the other cases cited by plaintiff were either reviewed de novo for procedural reasons or failed to note any authority ceded to the plan administrator in interpretation of plan terms.[8] Other courts have applied the same or similar plan language for abuse of discretion and upheld plan administrators' determinations that losses with a non-accidental contributing cause were not covered under accidental death policies.[9] In particular Unum points to *Creno v. Metropolitan Life Insurance Co.*, where the District of Arizona upheld a denial of accidental death benefits for a drowning death, where evidence suggested that the decedent's seizure disorder was a contributing factor. 2014 WL 4053410 (D. Ariz. Aug. 15, 2014). There the plan language at issue required that the loss be the "direct result of the accidental injury, independent of other causes," and excluded coverage for "loss[es] caused or contributed to by" nine risks, including illness. *Id.* at *8. The court agreed that the exclusionary clause could be interpreted as excluding coverage where the noncovered risk

---

[7] *Vickers v. Boston Mut. Life Ins. Co.*, 135 F.3d 179 (1st Cir. 1998); *Dowdy v. Met. Life Ins. Co.*, 890 F.3d 802 (9th Cir. 2018); *Johnson v. Life Investors' Ins. Co. of N. Am.*, 98 Fed. App'x 814 (10th Cir. 2004).

[8] One case, relied on heavily by plaintiff in her reply, did consider the claim under an abuse of discretion standard. *See Coleman v. Met. Life Ins. Co.*, 262 F.Supp.3d 295 (E.D.N.C. 2017). In that matter, however, the court determined that the plan administrator's decisionmaking process "was not reasoned and principled." *Id.* at 314. The court weighed this factor together with its finding of a conflict of interest (due to the structural conflict itself as well as "circumstances [suggesting] a likelihood that the conflict motivated MetLife's handling of the claim") against the deference ordinarily owed to the plan administrator under an abuse of discretion standard. *Id.* at 309–15. Plaintiff does not show that either circumstance applies in this case. In *Coleman*, moreover, Fourth Circuit precedent required that a pre-existing disease could not be considered as a cause unless it "substantially contributed" to the loss and that a susceptibility to injury resulting from either congenital weakness or previous injury or illness "does not necessarily amount to a substantial contributing cause." *Id.* at 302 (quoting *Adkins v. Reliance Standard Life Ins. Co.*, 917 F.2d 794, 797 (4th Cir. 1990)).

Here the court determines no such substantiality requirement in the exclusionary clause. This case is distinguishable from the almost-de novo standard employed in *Coleman*. Additionally, the imposition of a substantiality requirement onto the plan language separates the matter from our reasonableness review. Accordingly, *Coleman* and other cases relying on *Adkins*, whose rule has not been adopted by this circuit, are of little persuasive value. *See also Towers v. Life Ins. Co. of N. Am.*, 2011 WL 3752734, at *4–*5 (M.D. Fla. Aug. 25, 2011) (discussing the circuit split over *Adkins*'s substantiality requirement).

[9] *E.g.*, *Ervin v. Nat'l Union Fire Ins. Co.*, 132 F.Supp.3d 698 (D. Md. 2015); *Miller v. Hartford Life & Acc. Ins. Co.*, 2010 WL 1050006 (N.D. Ga. Mar. 17, 2010).

"cooperated 'in any degree' with the accidental injury that resulted in loss." *Id.* Accordingly, it upheld the plan administrator's decision under arbitrary and capricious review.[10]

In this matter, the policy language explicitly defines covered losses as those caused by accidental injury and then defines "injury" as only including "bodily injury that is the direct result of an accident **and not related to any other cause**." Doc. 10, att. 2, pp. 45, 46; doc. 10, att. 4, pp. 58, 59 (emphasis added). It also excludes coverage for "any accidental losses caused by, contributed to by, or resulting from" several occurrences, including "disease of the body." Doc. 10, att. 2, pp. 39–40; doc. 10, att. 4, p. 52. Unum's interpretation of its plan language as excluding accidental injuries where physical illness was a contributing factor is a reasonable reading of the plan language, even though other courts have read such terms to require that the non-accidental cause be of a certain magnitude. The language of the plan and the great deference owed to the plan administrator in its interpretation of that language admit no other result. Accordingly, Unum's interpretation withstands abuse of discretion review. The court now decides whether its findings under this standard were supported by substantial evidence.

### B. *Finding of substantial evidence*

#### 1. *Standard of Review*

A plan administrator's decision to deny benefits must be based on "substantial evidence." *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004). It abuses its discretion when "the decision is not based on evidence, even if it is disputable, that clearly supports the basis for its denial." *McCorkle*, 757 F.3d at 457 (quotations omitted). "Substantial evidence is 'more

---

[10] As plaintiff notes, the Ninth Circuit subsequently appeared to call this decision into question in *Dowdy*, supra, by finding that the plan language at issue required that a plaintiff's diabetes be at least a substantial contributing factor to the complications that led to amputation of his leg after it was injured in an accident. 890 F.3d at 808–11. *Dowdy*, however, granted no deference to the plan administrator's interpretations and instead interpreted the plan language with deference to the policyholder. Accordingly, it is of little persuasive value here and cannot be said to overrule *Creno*, which was decided under the standard of review and deference due in this matter.

than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ellis*, 394 F.3d at 273 (quoting *Deters v. Sec. of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)). The court need only determine whether the decision falls "somewhere on a continuum of reasonableness—even if on the low end," and it is forbidden from substituting its own judgment for that of the plan administrator. *McCorkle*, 757 F.3d at 457–58. In other words, a determination will only be overturned if it bears no "rational connection" to the "known facts" of the case. *Id.* (quoting *Holland*, 576 F.3d at 246).

To successfully appeal a plan administrator's denial of a claim, a plaintiff must do more than show that substantial evidence supports his claim. *Ellis*, 394 F.3d at 273. Instead, he must demonstrate that the plan administrator's decision was not supported by substantial evidence. *Id.* Moreover, "when faced with two competing medical views, a plan administrator may exercise discretion and choose one of them." *Rittinger v. Healthy Alliance Life Ins. Co.*, __ F.3d ___, 2019 WL 391771, at *5 (5th Cir. Jan. 31, 2019) (citing *Gothard v. Met. Life Ins. Co.*, 491 F.3d 246, 249–50 (5th Cir. 2007)); *see also Corry*, 499 F.3d at 401 (The "job of weighing valid, conflicting professional medical opinions" belongs to the plan administrator rather than the court.)

### 2. Application

Here the plan administrator's decision on the second round of review was summarized in its May 24, 2018, letter to plaintiff:

> [I]t has not been established, as required by the policy, that Mr. Hillebrandt's death was an accidental bodily injury resulting from accident and independently of all other causes. While the cause and manner of Mr. Hillebrandt's death remains undetermined, there is evidence that his medical conditions **could have reasonably contributed to or been** the cause of his death.

Doc. 30, att. 2, p. 214 (emphasis added). The plaintiff maintains that the record "strongly support[s] the conclusion that the air embolism . . . was the proximate and sole cause of death" and that "it is

-15-

highly likely that [the decedent] suffered no medical issues except for the air embolism." Doc. 31, p. 24. Furthermore, she insists that Unum engages in "pure[] speculation" by finding that a preexisting medical condition played any role. *Id.* at 26–28.

As Unum points out, and plaintiff does not refute, there are two probable scenarios that would account for an air embolism (assuming that the decedent experienced one). These are improper breathing on ascent due to (1) a diving equipment malfunction[11] or (2) underlying medical issues. Both could have prevented the decedent from breathing properly during his ascent and caused the air embolism. Doc. 34, p. 35. According to Unum, only the first would constitute an accidental death under its interpretation of policy provisions and only the second is supported by any evidence. *Id.* Namely, Unum points to the following:

- The decedent's history of cardiovascular disease and asthma;
- Nelson's observation that these conditions, particularly the asthma, put him at a greater risk for a "natural event" while diving, and that the asthma itself might have made the embolism more likely;
- The fact that the decedent began having trouble within a few minutes of the dive;
- The lack of evidence of an equipment malfunction, the decedent holding his breath on ascent, or too-rapid ascent, and Nelson's conclusion that none of these factors suggested the setting that would cause an air embolism;
- The fact that the decedent's alveolar septal rupture, a key indicator of air embolism according to Caruso, could also be caused by mechanical ventilation; and
- Caruso's acknowledgment that witnesses who had observed the decedent in the water stated that he appeared to develop a medical problem while underwater.

*Id.* at 30–31. Dr. Caruso found, and Dr. Nelson did not refute, that the echocardiogram ruled out the occurrence of a "fatal primary cardiac event." Doc. 11, att. 1, p. 9. He did not state whether

---

[11] Dr. Caruso asserted that an examination of the equipment could have shown acceptably functioning dive gear, and that such a function would not change his opinion. Doc. 11, att. 1, p. 9. However, he offers no alternate, non-medical cause of the breathing difficulty on ascent and only emphasizes that the decedent most likely suffered an air embolism, "regardless of the triggering event." *See, e.g.*, doc. 30, att. 2, p. 241 (supplemental report).

these results would also rule out a non-fatal event that caused the decedent to surface and initiated his collapse. At the autopsy, the medical examiner was unable to rule out heart disease as a cause of death. Caruso also admitted that he could rule out the decedent's pre-existing health conditions as a contributing factor to an embolism and that asthma created a predisposition to such an event. *See* doc. 30, att. 2, pp. 241–44. Instead, he only opined that "[e]ven if . . . medical conditions such as heart disease and/or asthma may have contributed to his death, the manner of death would still be classified as an accident . . . ." *Id.* at 243.

"[A]s a matter of general insurance law, the insured has the burden of proving that a benefit is covered, while the insurer has the burden of proving that an exclusion applies." *Critchlow v. First Unum Life Ins. Co. of Am.*, 378 F.3d 246, 256 (10th Cir. 2004) (quoting *Mario v. P. & C. Food Markets, Inc.*, 313 F.3d 758, 765 (2d Cir. 2002)). Even if the cause of death remains undetermined, a claim may reasonably be denied due to plaintiff's failure to meet his burden. *See Hancock*, supra, 590 F.3d at 1156.

The factors described above provide substantial evidence, even with the modicum less deference owed due to Unum's conflict of interest, that an air embolism could not be "ruled in" as a cause of death. Additionally, even if the record did show sufficient support for the occurrence of an air embolism, there is substantial evidence to support Unum's finding that an underlying medical condition at least caused the decedent's initial breathing difficulties and therefore contributed to his death. Although the plaintiff insists that it is "purely speculation" to determine that the decedent's accident related to any non-accidental cause, the findings of the Nelson report suggest otherwise. The likely role of the defendant's underlying health conditions was sufficiently established in the record to warrant exclusion of the loss under the plan's terms. The decedent's well-documented and recent history of asthma and the unrefuted likelihood that the disease could

cause a pulmonary over-expansion injury and embolism while diving provide the necessary support to show that Unum's decision fell somewhere "on a continuum of reasonableness." *Vega*, 188 F.3d at 297. Accordingly, the plaintiff shows no basis for overturning the plan administrator's decision on second review and judgment must be rendered in favor of Unum.

### III.
#### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's claims be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 13th day of February, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE